**ISLAND IMPROVEMENT CO. v. HOLMAN et al. (two cases).**

**Nos. 1636, 1637.**

Circuit Court of Appeals, Tenth Circuit.

Sept. 21, 1938.

W. Q. Van Cott, of Salt Lake City, Utah, for appellant.

J. D. Skeen and E. J. Skeen, both of Salt Lake City, Utah, for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

These separate appeals from proceedings in bankruptcy were lodged by a creditor of the two bankrupts, Warren Holman and Ray Holman. The facts are essentially the same and the parties stipulated that the appeals be considered together.

On September 1, 1926, Warren Holman and Ray Holman entered into a contract with the Rigby Ranch Company to purchase approximately 9,504 acres of grazing land situated in Summit County, Utah, and Uinta County, Wyoming. A new contract was entered into on December 1, 1930, in which the manner of payment was changed. The Rigby Ranch Company subsequently executed a mortgage upon the land to secure an issue of bonds in the sum of $100,000. The mortgage ran to the California Trust Company and Randolph Smith as trustees for the holders of bonds. The Continental National Bank and Trust Company became the successor trustee, and Island Improvement Company became the owner of $48,000 face value of the bonds, being one-half of the outstanding issue. The trustee foreclosed the mortgage and Island Improvement Company acquired an undivided half interest in the land by reason of its ownership of half of the bonds. The remaining half interest in the land was conveyed to David P. Howells. The respective beneficial interests of the Holmans in the sale contract were three-

fourths in Warren and one-fourth in Ray. The debtors were in possession of the land as tenants in common during the grazing seasons in 1934, 1935, and 1936. They did not pay anything for the use and occupancy of such land for the years 1934 and 1935.

On March 21, 1934, the Holmans filed separate petitions for debtor's relief under subsections (a) to (r) of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203 (a–r). Prior thereto the trustee under the indenture securing the bonds commenced proceedings in the state court to terminate the purchase and sale contract. Immediately upon assuming jurisdiction, the bankruptcy court issued an order restraining further proceedings in the action in the state court, and allowing the debtors to retain the possession and use of the grazing land. Due to a failure to obtain acceptance of a majority in number and amount of their creditors to their proposal for composition and extension on the Holmans on March 4th, 1935 petitioned for adjudication as bankrupts under subsection (s) of the first Frazier-Lemke Act. 48 Stat. 1289.

On April 6, 1935, the court offered the privilege of grazing the land to the highest bidder. The bankrupts submitted a bid of thirty-four cents per acre and it was accepted. Following the decision in Louisville Joint Stock Land Bank v. William Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, holding the first Frazier-Lemke Act unconstitutional, the court dismissed the cases as to subsection (s) of Section 75 due to a lack of jurisdiction; but jurisdiction was retained under other sections of the act. The debtors were required by an order entered on August 19, 1935, to show cause why they should not be restrained from grazing their sheep upon the land because of failure to pay the amount which they had bid; and they were required by an order entered on September 11, 1935, to pay the referee's fee for services rendered under the original subsection (s) of Section 75 of the Bankruptcy Act. On October 28th, the debtors filed separate petitions to be adjudicated bankrupts under subsection (s) of the second Frazier-Lemke Act, 49 Stat. 942, 943, § 6, 11 U.S.C.A. § 203(s); and the adjudications were made on the following day. The referee made an order on December 11th continuing the bankrupts in possession of the land and fixing an annual rental thereof at seventeen cents an acre. The bankrupts were further ordered to pay the rental for the grazing season of 1936 on or before November 1st of that year. The court increased the amount from seventeen cents an acre to twenty-five cents an acre. The increased sum was paid and is now in the registry of the court. The court entered orders in each case from time to time during the years 1935 and 1936, one purporting to discharge the sheep from the jurisdiction of the court, and others allowing the bankrupt to obtain loans from the Regional Agricultural Credit Corporation with which to pay operating expenses. The court made an order on June 12, 1935, authorizing the trustee under the indenture to institute proceedings in the state court to terminate the purchase and sale contract. The trustee commenced such an action, but failed to prevail. On March 14, 1936, the court again authorized the institution of proceedings to terminate the contract, but continued the bankrupts in possession of the land. Pursuant to such order the trustee served notice upon the bankrupts purporting to terminate the contract within forty-five days, but no suit was instituted. The Chalk Creek Ranch Company was organized under the laws of Utah on October 3, 1936, while the bankruptcy proceedings were pending. Ray Holman, Catherine Holman, his wife, E. J. Skeen, his attorney, and two others were the incorporators. Virtually all of the capital stock was issued in the name of Ray Holman. He held one-fourth for his own beneficial use and three-fourths for the beneficial use of Warren Holman. Howells and the corporation entered into a contract on October 5th, in which he agreed to sell his interest in the land and water rights previously acquired, with certain minor exceptions, to the corporation for $52,010 payable on or before four years from date. Ray Holman executed a mortgage covering his sheep to secure a note of $5,000 and that sum was paid to the corporation for 5,000 shares of the capital stock. The corporation in turn paid the sum received to Howells as a part of the purchase price of the land.

On February 5, 1937, the bankrupts interposed separate motions to dismiss the proceedings. Island Improvement Company thereupon filed petitions asking that the bankrupts be required to pay rental; that the court appoint a trustee to take over all of their assets; that the court withdraw as improvident the orders purporting to discharge the mortgaged sheep

from the jurisdiction of the bankruptcy court; that the bankrupts be required to account for all assets in which they had dealt since the adjudication; and that the petitions for dismissal be denied. Howells filed motions in intervention. After an extended hearing, the court entered an order in each case in which it was found that the earlier order discharging the mortgaged sheep from further jurisdiction of the court in the bankruptcy proceedings was within the discretion of the court; that the contract of sale of the land was terminated by the parties thereto; that the bankrupt was obligated to pay rental for the year 1936; and that the court did not have authority to require the payment of rental for the years 1934 and 1935. Island Improvement Company appealed.

■ It is contended at the threshold that the Improvement Company has no standing to maintain the appeals for the reason that as a bondholder it is not a proper party in interest for that purpose; that the trustee of the trust indenture is the only party in whom the right of appeal rests; and that the rights of the Improvement Company are governed solely by the action of the trustee. The Continental National Bank and Trust Company, after foreclosure, conveyed to the Improvement Company an undivided one-half interest in all of the real property and also assigned all claims, demands, and causes of action existing against the bankrupts. The questions at hand were raised by the Improvement Company after it became owner of such interest in the property. As such owner, it is clearly a proper party in interest to maintain the appeals.

■ The court found that the contract of sale was cancelled by the parties, and that finding is challenged. After the trustee attempted without success to terminate the sale contract in the state court notice of termination within forty-five days was served upon the debtors on April 27, 1936. The bondholders thus elected to exercise their right of forfeiture due to the default of the debtors. A representative of the bankrupts served notice of election to terminate upon the trustee. Rentals and damages were waived. Certain appeals then pending were dismissed and the bankrupts vacated the premises at the close of the grazing season. The finding is supported by substantial evidence and should not be overturned.

■ Next, it is argued that the court erred in holding that it lacked power or authority to force the bankrupts to pay rental for the years 1934 and 1935. The first petitions were filed by the debtors for relief under subsections (a) to (r) of Section 75, on March 21, 1934. Subsection (s) of the first act having been held unconstitutional, the court dismissed the petitions on June 1, 1935. On October 28th thereafter, petitions were filed under the amended subsection (s). During the grazing seasons of 1934 and 1935 the court held jurisdiction over the bankrupts and their property by virtue of subsections (a) to (r). These subsections provide for a stay of proceedings during the time the farmer is endeavoring to secure an agreement of composition or extension, but they do not authorize the exaction of rental. Subsection (s) is the only provision in the act authorizing the requirement of rental and it has no application unless and until the debtor proceeds under its terms. Proceedings under its terms are merely a continuation of proceedings previously instituted under other provisions of the section. Bradford v. Fahey, 4 Cir., 76 F.2d 628. A court is without power while proceeding under subsections (a) to (r) to require the debtor to pay rental. It is only after the debtor has invoked the provisions of subsection (s) that the court may require him to pay any rental. The amended subsection did not become effective until August 28, 1935; and the court was without power or prerogative prior to that time to exact any rental from the debtors for the right to graze the land. The Improvement Company relies strongly upon Adair v. Bank of America National Trust & Savings Association, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889. There the mortgagee had mortgages on real estate and the proceeds of a crop planted thereon. The court acting under subsections (a) to (r) took control of the property and harvested the crop. A part of the revenue derived was devoted to the cost of harvesting, to which the mortgagee objected. The court sustained such application of proceeds because it was necessary for the protection of the crop which was within the jurisdiction of the court, and for the further reason that subsection (e), § 75, 11 U.S.C.A. § 203(e), expressly provides that the court shall exercise such control over the property as it deems in the best interests of the farmer and his creditors. The case does not support the contention

advanced here that a debtor must pay rental for the use of his own property prior to the enactment of the amended subsection (s).

Error is assigned upon the action of the court in fixing the rental value for the year 1936 at twenty-five cents per acre. It is said that all of the evidence tended to show that the value was greater than the figure fixed. There was much evidence to the effect that the value was thirty cents per acre or more. But the subject matter was not one with which only experts were familiar. It was one respecting which laymen of experience have reliable and dependable knowledge. The court was not bound blindly to follow the figures fixed by the witnesses. Instead, the court was well warranted in bringing to bear upon the testimony personal knowledge of conditions and values of grazing lands, gained through long years of residence in Utah. Furthermore, the referee fixed the reasonable rental value at a sum equal to seventeen cents an acre; and the court was warranted in taking into account that considered action along with the testimony offered at the hearing. The finding is not without support. It is supported by substantial evidence and should not be disturbed.

The remaining contention which merits attention is that the court should have set aside the orders discharging the mortgaged sheep from the jurisdiction of the bankruptcy court for the reason that the bankrupts had no equity therein. The argument is that the bankrupts fraudulently misrepresented the facts in their respective applications for discharge. There were no misstatements in either petition concerning the number of sheep owned, the amount of the mortgage indebtedness covering them, or of any other present, existing, known fact. It is not asserted that any facts were misstated or withheld respecting the number of sheep or the amount of the mortgage liens. The principal contention rests upon statements made in applications submitted to the Regional Agricultural Credit Corporation about seventy-five days previously. It is urged that some statements made in the applications for loans were in conflict with some made in the petitions for discharge. The petitions for discharge were confined to present, existing facts, while the applications for a loan took into consideration the estimated lamb crop for the year 1936, the estimated wool crop, the estimated operating expenses, and the estimated profits. That difference accounts for the so-called discrepancies. The incurring of debts and the payment of money by the bankrupts after discharge of the sheep would doubtless warrant the court in repudiating such transactions and in taking corrective measures, but they would not warrant the vacation of the orders of release in the absence of misrepresentation of present, existing facts concerning the number of sheep and the amount of the encumbrances upon them. The bankrupts subsequently made substantial financial gains in the operation of the sheep, but that is not enough to require the vacation of such orders in the absence of fraud. The trial court carefully heard all of the evidence submitted in support of the contention that fraud had been practiced upon the court. No doubt the court was keenly alert to ascertain whether it had been imposed upon, and failed to find that any misrepresentation had occurred. There is nothing in the record to warrant this court in reaching a contrary conclusion.

The orders are severally affirmed.