**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, Trustee,**

**and**

**Central States, Southeast and Southwest Areas Health and Welfare Fund, and Howard McDougall, trustee, Plaintiffs,**

**v.**

**CENTRAL TRANSPORT, INC. and Central Cartage Co., both Michigan Corporations, Defendants.**

No. 94 C 774.

United States District Court, N.D. Illinois, Eastern Division.

May 1, 1997.

Thomas Maurice Weithers, Robert Anthony Coco, Patrick J. Connor, Central States Law Department, Rosemont, IL, Albert M. Madden, Central States Law Department, Des Plaines, IL, for Plaintiffs.

Grady B. Murdock, Jr., Earl L. Neal & Associates, Chicago, IL, Scott T. Stirling, Patrick A. Moran, Evans & Luptak, Detroit, MI, for Central Cartage Co.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds and their trustee, Howard McDougall, ("Funds"), brought suit against Central Transport, Inc.[1] and Central Cartage Co. ("Cartage"), seeking to collect delinquent contributions to employee benefit plans. The Funds have moved for summary judgment. For the following reasons, the motion is granted.

### I.

Cartage is a party to nationwide collective bargaining agreements, National Master Freight Agreements, and area-wide supple-

---

**1.** I dismissed the claims against this defendant in an October 2, 1995 Minute Order.

mental agreements, Central States Area Local Cartage Supplemental Agreements covering April 1, 1991 to March 31, 1994 ("1991–1994 Agreement"). The other parties to the Agreement are local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT"). Under the 1991–1994 Agreement, participating employers like Cartage fund the Funds by contributions on behalf of their employees. In the present suit, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Funds seek to collect audited delinquent contributions. The Funds have moved for summary judgment.

## II.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Funds say that Cartage is precluded by collateral estoppel from litigating that it is not liable for contributions on behalf of casual employees,[2] regardless of union membership, and on behalf of regular employees, who were compensated for holidays, but did not work on those days. Cartage agrees that if collateral estoppel is applicable it is liable in this action.

The four requirements for collateral estoppel are that

> 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

**2.** The 1991–1994 Agreement divides the covered workforce into three categories: casual, probationary, and regular employees.

**3.** Cartage also refers to a Settlement Agreement entered into by the IBT, Jackie Presser, Trucking Management Inc., and Motor Carriers Advisory Council. Cartage does not argue that the Settle-

In *Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.,* 861 F.Supp. 1402 (N.D.Ill.1994), *aff'd,* 69 F.3d 1312 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996) (*"Lawsuit I "*), the issues were whether, under the 1991–1994 Agreement, Cartage was liable for contributions on behalf of non-union casual employees and on behalf of regular employees for holidays during which the employees did not actually work, but for which they were paid. Judge Leinenweber held that the unambiguous language of the Agreement mandated such contributions. He explicitly rejected the arguments Cartage employs at bar—that it was not the parties' intent to contribute on behalf non-union casual employees and on behalf of employees paid for, but not working during, the holidays. The Funds' motion for summary judgment was granted on both issues. *Id.* at 1406–10. The issue in Lawsuit I and this suit are therefore the same.

A party may avoid collateral estoppel if it demonstrates "that [ (1) ] newly discovered evidence was essential to a proper decision in the prior action and [ (2) ] that he was in no way responsible for the lack of such evidence in the prior action." *McLellan v. Columbus I–70 W. Auto–Truckstop, Inc.,* 525 F.Supp. 1233, 1235 (N.D.Ill.1981). Cartage proffers two affidavits by Jack Yager, one of the IBT's negotiators of the 1991–1994 Agreement, regarding discovered evidence.[3]

The evidence referred to in the Yager affidavits concern the parties' intent viz-a-viz the 1991–1994 Agreement and the Funds' knowledge of that intent. Reviewing whether the same affidavits were conclusive or dispositive for the purposes of a Fed.R.Civ.P. 60(b)(6) motion in *Lawsuit I,* which Judge Leinenweber denied, the Seventh Circuit concluded that the affidavits were "not even relevant." 69 F.3d at 1315.

ment Agreement was unavailable during *Lawsuit I.* "Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Yamaha Corp. of America v. United States,* 961 F.2d 245, 254–55 (D.C.Cir.1992).

The Seventh Circuit referred to the "Yager's affidavit" in the singular. However, both affidavits were part of the record. The Seventh Circuit's analysis addressed the irrelevance of the Funds' knowledge. The Seventh Circuit concluded that

> [b]ut the fact remains that the affidavit does not purport to decode ambiguous language; it expresses an understanding inconsistent with the language. As we emphasized [in previous opinions] ..., a multi-employer pension agreement is not a normal two-party contract for which evidence of idiosyncratic meaning may be used to depart from the objective meaning of the words.

*Id.*

### Conclusion

As there is no genuine issue of material fact with respect to Cartage's liability, the Funds' motion for summary judgment is granted. Cartage concedes that the amount of the delinquency is $950,338.20.[4] Judgment will be entered for that amount, plus interest, audit costs, and attorneys' fees and costs. The Funds are given seven days to provide an itemized statement covering the additional amounts.

---

4. Cartage failed to file a response to the Funds' 12(M) Statement, thereby conceding the amount of the delinquent contributions sought. N.D. Ill. Local R. 12(N)(3). The Funds also seek interest, audit costs, and attorneys' costs and fees. Cartage has provided no support for its argument that it is not liable for audit costs and attorneys' fees, both allowed under the ERISA and the trust agreements.