142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND, Plaintiff-Appellee,
v.
CENTRAL CARTAGE COMPANY, a Michigan Corporation, Defendant-Appellant.
 No. 97-2321.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 16, 1997.*
Decided May 21, 1998.
Rehearing Denied July 16, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois Eastern Division, No. 94 C 774. Elaine E. Bucklo, Judge.
 Before Hon. JOHN L. COFFEY, Hon. DANIEL A. MANION, and Hon. MICHAEL S. KANNE, Circuit Judges.
 ORDER
 MCDOUGALL, J.
 
 
 1
 The defendant-appellant, Central Cartage Co., appeals from a grant of summary judgment in favor of Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), plaintiff-appellant herein, obligating Central Cartage to fulfill its contractual obligation to pay employer contributions to the Fund. Central Cartage also challenges the district court's denial of its motions to compel alternative dispute resolution and permit its depositions of Fund trustees regarding their contractual intent. The Pension Fund has filed a motion to dismiss for lack of jurisdiction. We grant the Fund's motion and dismiss this appeal, accordingly.
 
 I. BACKGROUND
 
 2
 Central Cartage is a Michigan corporation primarily engaged in the business of local trucking. The Company entered into a nationwide collective bargaining agreement, known as the National Master Freight Agreement, with the International Brotherhood of Teamsters ("IBT"), spanning the period of time from April 1, 1991, through March 31, 1994. It also executed a supplemental agreement with the union covering all "truck drivers, helpers, dockmen, warehousemen, checkers, power-lift operators, hostlers, and such other employees ... engaged in local pickup, delivery and assembling of freight." This supplemental agreement obligated Central Cartage to contribute to the Pension Fund for all employees covered under the agreements. It further provided an alternative dispute resolution mechanism whereby "[d]isputes or questions of interpretation concerning the requirement to make contributions on behalf of specific employees or classifications of employees shall be submitted directly to the Conference Joint Area Committee by either the Employer, the Local Union, or the trustees."
 
 
 3
 In February of 1994, the Pension Fund filed suit against Central Cartage pursuant to section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, alleging that, during the years 1991-1994, Central Cartage had intentionally mis-classified certain employees as "casual" instead of "regular" employees,[1] as well as failed to pay employer contributions owed to the Pension Fund on behalf of these employees. Then, in January 1995, Central Cartage filed a motion to dismiss the case and compel alternative dispute resolution, as provided for in the supplemental and collective bargaining agreements. The Pension Fund filed a motion for a protective order barring the deposition of several Fund trustees who Central Cartage wished to depose regarding their intentions as to whether non-union casual employees were to be covered by the supplemental and collective bargaining agreements. This motion was granted on February 25, 1995. The district court subsequently denied Central Cartage's motion to dismiss and compel alternative dispute resolution because, in its view, the Company failed to "promptly" invoke the provision in the agreement "until nearly a year after the case was filed." Central Cartage's motion for reconsideration of the court's order was denied. Instead of proceeding to trial, the Company filed an interlocutory appeal with this Court from the district court's ruling denying the motion to dismiss and compel alternative dispute resolution. We dismissed the appeal for lack of jurisdiction. See Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co., 84 F.3d 988 (7th Cir.1996). The Supreme Court denied Central Cartage's writ of certiorari from our judgment, Central Cartage Co. v. Central States, Southeast and Southwest Areas Pension Fund, --- U.S. ----, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996), and the case proceeded to trial on the merits in the district court.
 
 
 4
 With the litigation back in the trial court, Central Cartage again petitioned to permit its deposition of the Fund trustees in order to ascertain their intent with respect to the meaning of terms set forth in the agreements at issue. This motion was denied because, as the court stated, "evidence of an idiosyncratic meaning could not be used to depart from the objective meaning of the words [since] ... this was not a normal two-party contract." Central Cartage then renewed its motion to dismiss the action and compel alternative dispute resolution. The court denied this renewed motion by a minute order, dated January 14, 1997. The Pension Fund subsequently filed a motion for summary judgment, contending that the doctrine of collateral estoppel precluded Central Cartage from litigating issues in this case that had already been decided in Central States Pension Fund v. Central Cartage Co., 861 F.Supp. 1402 (N.D.Ill.1994), aff'd, 69 F.3d 1312 (7th Cir.1995), cert. denied, 517 U.S. 1134, 116 S.Ct. 1419 1996, 134 L.Ed.2d 544 ("Cartage I"). The trial judge entered summary judgment in the Fund's favor on May 1, 1997. See Central States, Southeast and Southwest Areas Pension Fund, 962 F.Supp. 122 (N.D.Ill.1997). In so doing, she concluded that the decision in Cartage I collaterally estopped Central Cartage from litigating the issue of whether contributions were due to non-union casuals and regular employees for paid holidays:
 
 
 5
 In [Cartage II, ... the issues were whether, under the 1991-1994 Agreement, Cartage was liable for contributions on behalf of non-union casual employees and on behalf of regular employees for holidays during which the employees did not actually work, but for which they were paid. Judge Leinenweber [the district judge presiding over the Cartage I litigation] held that the unambiguous language of the Agreement mandated such contributions.... The issue in [Cartage I ] and this suit are therefore the same.
 
 
 6
 Id. at 123. The court also rejected as irrelevant Central Cartage's proffer of two affidavits of an individual involved in negotiating the 1991-1994 agreement:
 
 
 7
 The evidence referred to in the ... affidavits concern the parties' intent viz-a-viz the 1991-1994 Agreement and the Fund's knowledge of that intent. Reviewing whether the same affidavits were conclusive or dispositive for the purpose of a Fed.R.Civ.P. 60(b)(6) motion in [Cartage I ], which Judge Leinenweber denied, the Seventh Circuit concluded that the affidavits we "not even relevant ."
 
 
 8
 Id.
 
 
 9
 On May 19, 1997, Central Cartage appealed from the order granting the Pension Fund's motion for summary judgment. The Fund filed a motion to dismiss the appeal for lack of jurisdiction only days later, arguing that "the named appellant is a corporation unrelated to the original defendant, which did not even exist until nearly two years after the complaint was filed and served.... Since the notice of appeal was not filed by a party to the litigation, it is improper and, as such, the appeal should be dismissed." By an order dated July 24, 1997, we informed the parties that we would consider the Fund's motion to dismiss with the merits of this appeal.
 
 II. ISSUES
 
 10
 We are called upon to consider four issues. Initially, we must address the issue raised in the Pension Fund's motion to dismiss as to whether we even have jurisdiction to hear this appeal. If that threshold question is answered in the affirmative, we shall then turn to discuss the several arguments Central Cartage raises: (1) that it was improperly denied the right to compel alternative dispute resolution in this case; (2) that the district court committed reversible error by denying the Company the right to depose the Fund trustees regarding their intent when negotiating the agreements; and (3) that summary judgment was improperly granted in the Pension Fund's favor.
 
 III. DISCUSSION
 
 11
 As noted above, the Pension Fund argues that the party bringing the instant appeal, Central Cartage, was not a party to the litigation before the district court. And it goes without saying that only a party in interest to the litigation may appeal from a judgment entered therein. See, e.g., Diehl v. United States, 438 F.2d 705, 711 (5th Cir.1971) ("The attorney for Mrs. Beth Koehler Diehl and Mr. Ritter gave notice of appeal from the judgment below, and thereby seeks to become a party on appeal. He was not a party below; he cannot be a party to this appeal."). We are in agreement with the Pension Fund, and believe that this appeal should be dismissed. Insofar as the facts underlying our decision are somewhat complex, we shall set them forth in particular detail below.
 
 
 12
 In 1932, Central Cartage Co. ("Old Cartage") was incorporated under the laws of Michigan. Its corporate identification number was 108-175 and its parent was CenTra, Inc., a Delaware corporation. The Pension Fund instituted the suit giving rise to this appeal against Old Cartage in 1994. On December 13, 1995, during the pendency of action against Old Cartage, and allegedly unbeknownst to the Pension Fund and the trial court, a new entity, Central Cartage Co. of Michigan, Inc. ("New Cartage"), was incorporated. Its corporate identification number was 353-980 and its parent also was CenTra, Inc. Then, on December 31, 1995, New Cartage dropped the "of Michigan, Inc." from its name. As a result, there were two separate entities--Old Cartage and New Cartage--with identical names, Central Cartage Co. The same day New Cartage assumed the name of Old Cartage, Old Cartage merged into its parent, CenTra, and went out of existence. What were once Old Cartage's assets and liabilities were transferred to New Cartage. Then, on August 9, 1996, CenTra sold 100 percent of its interest in New Cartage to U.S. Truck Company, Inc. The district court entered summary judgment against Cartage Co. on May 1, 1997--this was the same Cartage Co. against whom the action was brought, that is, Old Cartage. However, the certificate of appeal filed by "Central Cartage Co." identified the appellant's parent as U.S. Truck Company, Inc. We can assume, therefore, that New Cartage, as opposed to Old Cartage, against whom the action was originally brought, filed the present appeal.
 
 
 13
 The Pension Fund argues that, because it instituted its action against Old Cartage, and the party appealing from the district court's judgment is New Cartage, a separate entity, New Cartage may not bring its appeal since it was neither a party to the litigation nor substituted as a party pursuant to Fed.R.Civ.P. 25(c). Rule 25(c) provides, in relevant part:
 
 
 14
 In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.
 
 
 15
 Fed.R.Civ.P. 25(c). New Cartage, on the other hand, argues that it is the appropriate party to appeal to the extent that "Central Cartage Co. never changed its trucking operations" and that it "in substance" is "the same Central Cartage that existed before any merger in 1995." (Appellant's Br., at 8-9). It concludes that "Central Cartage Co. is the proper party to this appeal having had a judgment entered by the district court either against it or its predecessor in interest." (Id. at 10).
 
 
 16
 We are of the opinion that New Cartage does not have standing to appeal the judgment of the trial court, and as such, we dismiss this appeal for lack of jurisdiction. In Cartage I, 69 F.3d at 1315, this Court held that the survivor of a corporate merger was liable for the ERISA contributions of the entity whose existence ceased after the merger. General Highway Express ("GHE") had entered into bankruptcy without paying all of its obligations to the Pension Fund. The bankruptcy court approved a plan of reorganization whereby GHE was to contribute to the Fund over a ten-year span, beginning in 1983. Central Transport merged with GHE in 1987, and the payments GHE was to make ceased in 1988. Central Transport claimed that these payments were made unnecessary by a settlement agreement with the Pension Fund in November of 1988. We disagreed, and held Central Transport liable for the contributions because "Central Transport now 'is' GHE (in corporate law the merged firm is a continuation of its predecessor).... [T]he settlement agreement did not extinguish GHE's obligation (now Central Transport's) under the plan of reorganization in bankruptcy." Id. Applying the reasoning of Cartage I to the facts of this case, it is clear that New Cartage is not liable for Old Cartage's liability. Either Old Cartage (which no longer exists) or CenTra, Inc. (the company into which Old Cartage merged) is liable on the obligation to pay into the Fund. Because New Cartage was not substituted as a party under Fed.R.Civ.P. 25(c), it does not have standing to appeal.
 
 
 17
 The appellant submits that this conclusion contradicts authorities from two of our sister-circuits, Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542 (9th Cir.1989), and Island Improvement Co. v. Holman, 99 F.2d 63 (10th Cir.1938). In our view, neither of these cases are on point and, in fact, they do not even consider the effect of Rule 25(c). In Hal Roach Studios, the appellee, Hal Roach Studios ("HRS"), initially brought suit against Feiner & Co. and its president, Richard Feiner. HRS then filed a first amended complaint, based on diversity jurisdiction, against Feiner & Co. only. Although Richard Feiner was no longer a party to the action, HRS sought summary judgment against both Richard Feiner and Feiner & Co. The district court granted that motion as against both parties. Both Richard Feiner and Feiner & Co. appealed, at which time Hal Roach Studios argued that, "because Richard Feiner was not a proper party in this action, he lacks standing to appeal the judgment against him." Id. at 1546. The Ninth Circuit rejected this argument, concluding that "a nonparty against whom judgment is entered has standing without having intervened in the district court action to appeal the district court's exercise of jurisdiction over him." Id. (citations omitted). In this case, summary judgment was entered against Old Cartage, not New Cartage--Hal Roach Studios is thus inapposite.
 
 
 18
 Nor does Island Improvement Co. compel us to reach a different result. In that case, Island Improvement Co. was owner of one-half the outstanding issue of mortgage bonds. The mortgages were foreclosed upon, and Island Improvement Co. acquired an undivided on-half interest in the land by reason of its 50 percent ownership of the bonds. The trustee of the holders of the bonds subsequently made claims against the parties in bankruptcy, Warren and Ray Holman. After the Holmans interposed separate motions to dismiss the proceedings, Island Improvement Co. filed petitions requesting, inter alia, that the bankrupts be required to pay rent on the land secured by the mortgages. The court granted this petition in part, and rejected it in part, whereupon the Island Improvement Company appealed. On appeal, the Holman's contended that "the Improvement Company has no standing to maintain the appeals for the reason that as a bondholder it is not a proper party in interest for that purpose...." 99 F.2d at 66. The Tenth Circuit concluded that because the Improvement Company possessed an undivided one-half interest in the property at issue, and "[t]he questions at hand were raised by the Improvement Company after it became owner of such interest ... it is clearly a proper party interest to maintain the appeals." Id. at 66 (emphasis added). Here, the Pension Fund initiated the suit, and raised the Fl "questions at hand," before New Cartage, the party filing the appeal, even came into existence. The appellant's reliance on Island Improvement Co. is thus misplaced.
 
 IV. CONCLUSION
 
 19
 For the reasons stated, we conclude that this appeal must be dismissed for lack of jurisdiction. The appellant, "New Cartage," was not a party to the litigation in the district court, and has not been properly substituted as a party to the litigation pursuant to Fed.R.Civ.P. 25(c). Accordingly, we do not reach the merits of the appellant's arguments.
 
 DISMISSED
 
 
 *
 This successive appeal has been submitted to the same panel under Operating Procedure 6(b). After an examination of the parties' briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appellant's request for oral argument is denied and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 This reclassification lowered the level of contribution Central Cartage would have been required to pay to the Pension Fund