742 F.2d 392
 1984-2 Trade Cases 66,178
 SOUTH BEND CONSUMERS CLUB, INC., Plaintiff-Counterdefendant-Appellee,
v.
UNITED CONSUMERS CLUB, INC., and United Consumers Club
Franchising Corporation,
Defendants-Counterclaimants-Cross-
Claimants-Appellants,
v.
Andrew SPITE, Cross-Defendant-Appellee.
 No. 83-2976.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 16, 1984.
Decided Aug. 30, 1984.
 
 Kenneth R. Petrini, Barnes & Thornburg, South Bend, Ind., for plaintiff-counterdefendant-appellee.
 Howard C. Emmerman, Rudnick & Wolfe, Northbrook, Ill., for defendants-counterclaimants-cross-claimants-appellants.
 Before WOOD, CUDAHY, and COFFEY, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 United Consumers Club, Inc. and its wholly owned subsidiary United Consumers Club Franchising Corporation appeal a district court order, 572 F.Supp. 209, granting South Bend Consumers Club, Inc.'s motion for partial summary judgment. We dismiss for lack of jurisdiction.
 
 
 2
 * United Consumers Club and United Consumers Club Franchising Corporation (referred to collectively as "UCC") are franchisors of a buying club system. UCC purchases consumer goods at wholesale prices and resells these goods at its cost to its franchisees. The franchisees then sell the goods at discounts from retail to members of the public who have purchased memberships from the franchisees. Each franchisee pays UCC a franchise fee and a percentage of each membership that the franchisee sells.
 
 
 3
 South Bend Consumers Club ("SBCC") is a former Franchisee of UCC. Its franchise agreement contained a provision requiring SBCC to purchase all merchandise through UCC under the procedures and conditions set by UCC, and a post-term restrictive covenant not to compete with UCC or its other franchisees for a two-year period in a defined territory.
 
 
 4
 On July 23, 1982, UCC terminated SBCC's franchise. SBCC then commenced an antitrust action against UCC under section 1 of the Sherman Act, 15 U.S.C. Sec. 1 (1982), alleging that termination of its franchise was the result of a wrongful attempt to enforce an illegal tying arrangement in restraint of trade. On November 29, 1982, UCC filed a counterclaim setting forth an antitrust charge against SBCC and seeking an injunction prohibiting SBCC from competing in violation of the restrictive covenant. UCC took no other action on its request for injunctive relief until July 27, 1983, when it filed a motion for partial summary judgment which reiterated UCC's belief that it was entitled to injunctive relief as a matter of law. SBCC responded with a countermotion for partial summary judgment seeking an order that the franchise agreement's restrictive covenant not to compete was unreasonable and therefore unenforceable as a matter of law. At a September 9, 1983, hearing on the summary judgment motions, UCC withdrew its motion for partial summary judgment, and filed its first formal motion requesting a preliminary injunction to enjoin SBCC from violating the covenant not to compete. The district court subsequently granted SBCC's motion for partial summary judgment, holding that the restrictive covenant was unreasonable as written and therefore unenforceable as a matter of law. It is from this order that UCC attempts to appeal. The remaining issues in the underlying dispute have not yet been disposed of by the district court.
 
 II
 
 5
 The only issue we need address is a jurisdictional one. The district court did not certify its summary judgment order pursuant to Rule 54(b), Fed.R.Civ.P. UCC argues, however, that the order should be appealable under 28 U.S.C. Sec. 1292(a)(1) (1982) as the equivalent of an interlocutory order denying injunctive relief. 28 U.S.C. Sec. 1292(a)(1) is an exception to the general rule that a party can appeal only a final judgment and as such must be narrowly construed. Whyte v. THinc Consulting Group International, 659 F.2d 817, 819 (7th Cir.1981). Therefore, even when a district court order has the practical effect of denying injunctive relief, that fact alone is insufficient to qualify the ruling as an appealable interlocutory decree. In order to effectuate the congressional policy against piecemeal review, the appellant must also show that the order might have "serious, perhaps irreparable, consequence" and can be "effectually challenged" only by immediate appeal. Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); see also Matterhorn, Inc. v. NCR Corp., 727 F.2d 629, 630 (7th Cir.1984); Ohio-Sealy Mattress Manufacturing Co. v. Duncan, 714 F.2d 740, 743 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984).
 
 
 6
 UCC did not even attempt to meet this burden until questioned about it during oral argument. UCC completely ignored Carson in its briefs, arguing that under Data Cash Systems, Inc. v. JS & A Group, Inc., 628 F.2d 1038, 1040 (7th Cir.1980), the district court's order should be appealable simply on the basis that it is the effective equivalent of an interlocutory order refusing an injunction. We do not agree. Data Cash Systems allowed an interlocutory appeal of a summary judgment order, but the order in that case, unlike the order before us now, contained an express denial of injunctive relief, and the denial of the injunction was based on the issues disposed of by the summary judgment order. Though the order before us now may effectively preclude the possibility of a future grant of a preliminary injunction, the order itself contains no specific mention of injunctive relief. In any event, Data Cash Systems was decided before Carson. To the extent that Data Cash Systems may imply that irreparable consequences need not be shown before an order having the practical effect of refusing an injunction is appealed, it is no longer good law.
 
 
 7
 UCC does not face any danger of irreparable consequences. The covenant not to compete has a contractual life span of two years. Though SBCC began to violate the covenant immediately upon the termination of SBCC's franchise in July 1982, UCC did not file a formal motion for a preliminary injunction until September 1983, approximately 14 months later. Although UCC's November 1982 counterclaim alleged a violation of the covenant not to compete and prayed for an injunction as part of its relief, UCC never sought a hearing on its request for injunctive relief and never pursued the request in any manner until it filed its July 1983 motion for partial summary judgment. While this summary judgment motion conceivably encompassed a request for a preliminary injunction, even that motion was not filed until more than half of the covenant's life had expired. UCC's failure to promptly and actively seek injunctive relief "is a good indication that the status quo can continue until the ultimate conclusion of the litigation without interlocutory appellate review." Shirey v. Bensalem Township, 663 F.2d 472, 476 (3d Cir.1981); see also Plymouth County Nuclear Information Committee, Inc. v. Boston Edison Co., 655 F.2d 15, 17-18 (1st Cir.1981). Having waited such a length of time before actively seeking to enforce the covenant, UCC is in no position to tell this court that there exist exceptional circumstances sufficient to warrant an interlocutory appeal.
 
 
 8
 UCC does not lose its ability to protect itself by our denial of immediate appellate review. UCC and SBCC still have claims outstanding against each other. When a final judgment had been entered UCC can then appeal the entry of partial summary judgment that they attempt to challenge today. Even though the period in which competition can be enjoined under the clause in question will have expired,[1] UCC will still have the right to seek monetary damages.
 
 
 9
 UCC's own actions (and inaction) in this dispute belie any claim they might make of irreparable harm they will suffer if not granted immediate appeal. Given the standards set forth in Carson, along with "the strong federal policy against permitting piecemeal appeals," Matterhorn, Inc. v. NCR Corp., 727 F.2d at 633, we have no choice but to dismiss.
 
 
 
 [1]
 Oral argument in this case was held on April 16, 1984. At that time only about three months remained before the two year covenant not to compete would expire