84 F.3d 988
 20 Employee Benefits Cas. 1297
 CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Central States, Southeast and Southwest Areas
Health and Welfare Fund and Howard
McDougall, Trustee, Plaintiffs-Appellees,
v.
CENTRAL CARTAGE COMPANY, a Michigan Corporation, Defendant-Appellant.
 No. 95-2406.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 3, 1996.
Decided May 28, 1996.
 
 Albert M. Madden and Thomas M. Weithers (argued), Central States, Southeast & Southwest Areas Pension Fund, Rosemont, IL, for Plaintiffs-Appellees.
 Grady B. Murdock, Jr., Neal & Associates, Chicago, IL, Patrick A. Moran (argued), Scott T. Stirling and Eric A. Parzianello, Evans & Luptak, Detroit, MI, for Defendant-Appellant.
 Before COFFEY, MANION and KANNE, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Central States, Southeast and Southwest Areas Pension Fund (collectively the "Pension Fund") filed suit against Central Cartage Company pursuant to section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, claiming that Central Cartage had failed to fulfill its contractual obligation to pay employer contributions to the plaintiffs' pension fund. Nearly a year after the suit was filed, Central Cartage moved to dismiss the case and compel alternative dispute resolution. The district court denied the motion, finding that Central Cartage had waived its rights to arbitration or alternative dispute resolution. Central Cartage appeals; we dismiss for lack of appellate jurisdiction.
 
 I. Background
 
 2
 Central Cartage is a Michigan corporation engaged in primarily local trucking. The company (along with other trucking companies) entered into a nationwide collective bargaining agreement (known as the National Master Freight Agreement, or "NMFA") with the International Brotherhood of Teamsters, spanning the period April 1, 1991 to March 31, 1994. Central Cartage also entered into a supplemental agreement with the Union specifically covering all "truck drivers, helpers, dockmen, warehousemen, checkers, power-lift operators, hostlers, and such other employees ... engaged in local pickup, delivery and assembling of freight."
 
 
 3
 The supplemental agreement contains a provision obligating Central Cartage to contribute to the Pension Funds for Central Cartage's employees. The agreement also provides for alternative dispute resolution:
 
 
 4
 Disputes or questions of interpretation concerning the requirement to make contributions on behalf of particular employees or classifications of employees shall be submitted directly to the Conference Joint Area Committee by either the Employer, the Local Union, or the Trustees.
 
 
 5
 In February 1994, the Pension Funds filed suit against Central Cartage pursuant to the provisions of ERISA: The Pension Funds alleged that Central Cartage had intentionally misclassified certain employees as "casual" instead of "regular" employees (which lowered the required level of contribution to the pension funds) and had failed to pay employer contributions owed to the Pension Fund on behalf of these employees.
 
 
 6
 In April 1994, Central Cartage answered the complaint, alleging eleven affirmative defenses, including the Pension Fund's failure to exhaust administrative remedies. In a status report to the district court in July 1994, Central Cartage noted an unresolved issue of whether the Pension Fund had failed to exhaust its administrative remedies.
 
 
 7
 In anticipation of trial the parties conducted discovery. Although the record is not clear whether discovery proceedings were completed, in January 1995, Central Cartage filed a motion in district court to dismiss the case and compel alternative dispute resolution, as provided for in the supplemental agreement to the collective bargaining agreement. The district court ruled that Central Cartage had waived its contractual right to any alternative dispute resolution because the company had failed to "promptly" invoke the provision in the agreement "until nearly a year after this case was filed," conducting discovery, and filing status reports. See Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390-91 (7th Cir.1995) (holding that failure of a party to promptly move for arbitration after litigation has been commenced against that party is presumptive evidence that it has waived any contractual right to arbitration). Central Cartage made a motion for reconsideration; the court denied it. Instead of proceeding to trial, Central Cartage appeals the decision of the district court denying its motion to dismiss the lawsuit and compel alternative dispute resolution.
 
 II. Analysis
 
 8
 A threshold issue raised by the Pension Funds is our jurisdiction to review the appeal. Normally, only final judgments may be appealed. 28 U.S.C. § 1291; Carson v. American Brands, Inc., 450 U.S. 79, 83, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). However, Central Cartage has asserted two grounds for appellate jurisdiction: 28 U.S.C. § 1292(a)(1) (jurisdiction to review certain interlocutory decisions) or in the alternative 9 U.S.C. § 16 (appellate jurisdiction under the Federal Arbitration Act). Each will be considered in turn.
 
 A. Review of Interlocutory Decisions
 
 9
 Central Cartage asserts that the district court's action, denying the motion to compel arbitration, constituted in effect a refusal to order an injunction. Title 28 U.S.C. § 1292(a)(1) provides, with emphasis added:
 
 
 10
 (a) [T]he courts of appeals shall have jurisdiction of appeals from:
 
 
 11
 (1) Interlocutory orders of the district courts of the United States, ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;
 
 
 12
 However, "[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279, 108 S.Ct. 1133, 1138, 99 L.Ed.2d 296 (1988).
 
 
 13
 Historically, district court orders refusing to compel alternative dispute resolution (most commonly arbitration) could fall within the ambit of section 1292(a)(1) under one of two theories: the Enelow-Ettelson doctrine, or the rationalization that the order had the practical effect of ruling upon an injunction. See Matterhorn, Inc. v. NCR Corp., 727 F.2d 629, 630 (7th Cir.1984).
 
 
 14
 Initially arising from the old division between courts of law and courts of equity, the Enelow-Ettelson doctrine provided that an order staying legal proceedings (such as a suit for damages for a contract breach) in district court so as to rule upon an equitable defense (such as fraud in the formation of the contract) is analogous to an equity chancellor enjoining the proceedings before a law judge; thus orders refusing to stay the legal proceeding in favor of an equitable defense is analogous to an equity court's refusal to grant an injunction: which provides the grounds for appeal under § 1292(a)(1). Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). Some courts reasoned that a district court's refusal to stay litigation in favor of arbitration is equivalent to a court of equity refusing to enjoin a legal proceeding; the refusal of the injunction thus provides a basis for appellate jurisdiction. See e.g. B & R Assoc. v. Dependable Ins. Co., 835 F.2d 526, 528 (4th Cir.1987) (citing cases). However, our court refused to extend the doctrine to include orders refusing to compel arbitration. Ohio-Sealy Mattress Mfg. Co. v. Duncan, 714 F.2d 740, 743 (7th Cir.1983), cert. denied, 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984). The conflict over the application of the doctrine was rendered moot by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), which abolished the Enelow-Ettelson doctrine.
 
 
 15
 Apart from the Enelow-Ettelson doctrine, appellate review of interlocutory orders may be obtained under § 1292(a)(1) if the order has both the effect of an injunction and has "serious, perhaps irreparable, consequences." Carson v. American Brands, Inc., 450 U.S. 79, 83-84, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981) ("Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be effectively challenged only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.").
 
 
 16
 However, this court has refused to extend this theory to orders refusing to stay or dismiss district court proceedings in favor of arbitration. Ohio-Sealy, 714 F.2d at 743 ("The effect of the order in this case [refusing to stay district court proceedings in favor of arbitration] was merely to determine in which forum the claims would be heard. Thus, because [the appellant] has failed to establish that the denial is likely to have 'serious, perhaps irreparable' consequences as required in Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1980), this order is non-appealable at this stage of the litigation."); Matterhorn, Inc. v. NCR Corp., 727 F.2d 629, 631 (7th Cir.1984) ("the denial of a motion to compel arbitration pending a trial on the existence of an arbitration agreement does not have serious or irreparable consequences."); Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 870 (7th Cir.1985) ("Despite its resemblance to a mandatory injunction, an order to arbitrate is assimilated rather to a procedural order, such as a discovery order. Hence making or refusing to make such an order is not appealable under § 1292(a)(1).").
 
 
 17
 The appellant, Central Cartage, argues that Gulfstream altered the face of appellate jurisdiction and requires us to ignore our prior decisions and evaluate, on a clean slate, our jurisdiction to review interlocutory orders denying motions to compel arbitration. In support, the appellant urges us to follow two recent cases from the Fourth and Eighth Circuits holding that such orders have the practical effect of refusing to grant an injunction. Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp., 861 F.2d 420, 422 (4th Cir.1988) (holding that orders denying arbitration have an injunctive effect and serious consequences because they force parties to undergo the expense of trial before being able to appeal); Nordin v. Nutri/System, Inc., 897 F.2d 339 (8th Cir.1990) (same). See also Abernathy v. Southern California Edison, 885 F.2d 525, 527 n. 9 (9th Cir.1989) (holding that orders granting arbitration are not appealable, but observing that orders denying arbitration may come within the exception noted by Gulfstream and applied by the Fourth Circuit in Kansas Gas & Elec. Co.).
 
 
 18
 However, although Gulfstream overruled the Enelow-Ettelson doctrine, it specifically preserved the alternate route under 1292(a)(1), identified in our caselaw of Ohio-Sealy, Matterhorn et al. See Gulfstream, 485 U.S. at 287-88, 108 S.Ct. at 1142-43 ("Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequences.' ") (quoting Carson, 450 U.S. at 84, 101 S.Ct. at 996-97). Indeed, our court has recently noted and re-affirmed the analysis underlying Ohio-Sealy, refusing to treat the denial of a stay in favor of arbitration as an injunction:
 
 
 19
 Searching for an injunction in orders controlling the progress of litigation has an artificial quality. Every decision to proceed or wait imposes costs, but none resolves the merits. If potential costs of procedural decisions make for appellate jurisdiction then many interlocutory orders are appealable--a step the Supreme Court has told us to resist. See Digital Equipment Corp. v. Desktop Direct, Inc., --- U.S. ----, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). Cf. In re Springfield, 818 F.2d 565 (7th Cir.1987) (order that imposes costs but does not affect ultimate disposition of the merits is not appealable as an "injunction"). It is, after all, established that the costs of litigation are not "irreparable injury." If a district court errs in conducting a lawsuit when a contract calls for arbitration, that mistake may be corrected on appeal from a final decision;....
 
 
 20
 Briggs & Stratton Corp. v. Local 232, 36 F.3d 712, 714 (7th Cir.1994) (internal citations omitted), cert. denied, --- U.S. ----, 115 S.Ct. 1998, 131 L.Ed.2d 1000 (1995).
 
 
 21
 Accordingly, we decline to follow the Fourth and Eighth Circuits and reaffirm our holding in Ohio-Sealy et al. As noted in Briggs & Stratton, litigation costs are not irreparable harm and appellants have failed to show that the district court's order has the practical effect of refusing to grant an injunction.[1]
 
 B. The Federal Arbitration Act
 
 22
 Central Cartage asserts, in the alternative, that the Federal Arbitration Act provides appellate jurisdiction to review the district court's denial of a motion to compel arbitration.[2]
 
 
 23
 In the wake of Gulfstream, in 1989, Congress amended the Arbitration Act, specifying which interlocutory orders concerning arbitration are appealable and which are not. Specifically, 9 U.S.C. § 16(a) provides in part:
 
 
 24
 An appeal may be taken from--
 
 
 25
 (1) an order--
 
 
 26
 (A) refusing a stay of any action under section 3 of this title,[3]
 
 
 27
 (B) denying a petition under section 4 of this title to order arbitration to proceed.[4]
 
 
 28
 Thus, under § 16(a)(1)(A) and (B), appellants argue, we may review the district court's denial of its motion to compel arbitration.
 
 
 29
 This argument is correct, with one major flaw: section 1 of the Arbitration Act specifically excludes coverage--including the jurisdiction rules of § 16--for "contracts of employment of seamen, railroad employees, or any other class of employees engaged in foreign or interstate commerce."
 
 
 30
 Although several circuits have interpreted the language of § 1 to preclude the application of the Arbitration Act to all collective bargaining agreements, see e.g. Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Pennsylvania Greyhound Lines, Inc., 192 F.2d 310 (3d Cir.1951); United Elec., Radio & Mach. Workers v. Miller Metal Prod., Inc., 215 F.2d 221 (4th Cir.1954), our circuit has limited § 1 to the transportation industries. Briggs & Stratton, 36 F.3d at 714-15 (citing Pietro Scalzitti Co. v. Operating Engineers, 351 F.2d 576, 579-80 (7th Cir.1965)). See also Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 n. 3 (7th Cir.1995) ("The Seventh Circuit, however, has held that this [sec. 1] exclusion is limited to transportation workers, or in other words, workers actually engaged in the movement of goods in interstate commerce...."); Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1162 (7th Cir.1984). Thus, for disputes involving collective bargaining agreements covering transportation workers, the Arbitration Act does not provide jurisdiction for interlocutory appeals from a district court's denial of a motion to compel arbitration. Briggs & Stratton, 36 F.3d at 714-15.[5]
 
 
 31
 The appellant, Central Cartage, is primarily engaged in local trucking and occasionally transports cartage across state lines. We hold that the workers of Central Cartage (covered in the collective bargaining agreement at issue between Central Cartage and the Pension Fund) therefore qualify as "transportation" workers. Because the Arbitration Act does not apply to "transportation" workers, see § 1, Central Cartage's NMFA (the collective bargaining agreement) for its workers is not covered by the Act. Thus the jurisdictional provisions of § 16 of the Act are not applicable to Central Cartage's appeal.
 
 III. Conclusion
 
 32
 The appeal is dismissed for lack of appellate jurisdiction.
 
 
 
 [1]
 Further, Central Cartage's own actions in delaying nearly a full year before filing its motion to compel arbitration tends to demonstrate that prompt arbitration was not of vital interest to Central Cartage. See South Bend Consumers Club, Inc. v. United Consumers Club, Inc., 742 F.2d 392, 394 (7th Cir.1984) ("[Appellant's] failure to promptly and actively seek injunctive relief 'is a good indication that the status quo can continue until the ultimate conclusion of the litigation without interlocutory appellate review.' ") (quoting Shirey v. Bensalem Township, 663 F.2d 472, 476 (3d Cir.1981))
 
 
 [2]
 The district court specifically refused to compel "alternative dispute resolution." We will assume for purposes of the following analysis that the contractual dispute mechanism specified in the collective bargaining agreement (referring disputes to a "Joint Area Committee" for final resolution) is "arbitration" within the meaning of the Arbitration Act
 
 
 [3]
 Section 3 of the Arbitration Act provides that if a dispute is "referable to arbitration under an agreement in writing" the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
 
 
 [4]
 Section 4 of the Act states that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."
 
 
 [5]
 The Pension Fund has asked us to overturn Pietro Scalzitti and to hold that § 1 of the Arbitration Act excludes coverage for all collective bargaining agreements and not just those involving transportation workers. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991), noted the issue but declined to resolve it. The question of overruling Pietro Scalzitti and its progeny was presented to this court in Matthews, 72 F.3d at 53 n. 3, but we saw "no reason to overturn these well-established precedents." Id. Following Matthews, we similarly decline to apply the § 1 exclusion to all collective bargaining agreements