**MICROCHIP TECHNOLOGY INCORPORATED, Plaintiff–Appellee,**

v.

**U.S. PHILIPS CORPORATION and Philips Electronics North America Corporation, Defendants–Appellants.**

No. 03–1478.

United States Court of Appeals, Federal Circuit.

May 13, 2004.

Alan H. Blankenheimer, Heller Ehrman White & McAuliffe LLP, of San Diego, CA, argued for plaintiff-appellee. Of counsel on the brief were Chad S. Campbell and Barbara A. Bailey, Brown & Bain, P.A., of Phoenix, AZ.

John M. DiMatteo, Willkie Farr & Gallagher LLP, of New York, NY, argued for defendants-appellants. With him on the brief was Eugene L. Chang. Of counsel was Anna Aguilar.

Before MICHEL, LOURIE and DYK, Circuit Judges.

DYK, Circuit Judge.

Appellants U.S. Philips Corporation and Philips Electronics North America Corporation (collectively "Philips") appeal the decision of the United States District Court for the District of Arizona denying Philips' motion to compel arbitration. *Microchip Tech. Inc. v. U.S. Philips Corp.*, No. 01–CV–2090–PHX–PGR; 03–CV–0272–PHX–JAT (D. Ariz. June 13, 2003). Because the district court properly denied Philips' motion to compel arbitration, we affirm.

## BACKGROUND

Reduced to the essentials, the background for this case may be simply stated. Philips is the owner of U.S. Patent Nos. 4,689,740 (the " '740 patent") and 5,559,502 (the " '502 patent"), which generally relate to electronic circuits and apparatuses used to communicate between integrated circuits in a wide variety of applications, including televisions, computers and cellular phones. In October 2001, Philips sued a number of companies in the Southern District of New York (the "New York action") alleging infringement of the '740 patent. The appellee, Microchip Technology Incorporated ("Microchip"), was not one of the original defendants, but in reasonable apprehension of an infringement suit by Philips, Microchip sought a declaratory judgment in the District of Arizona (the "Arizona action") that it did not infringe

and was licensed to practice the '740 patent. Subsequently, Microchip amended its complaint in the Arizona action to seek an additional declaratory judgment it did not infringe and was licensed to practice the '502 patent. Philips counterclaimed for infringement of both patents, asserting that Microchip did not have a license. Philips also added Microchip as a defendant in the New York action, alleging infringement of the '740 patent.

The license dispute centered upon a 1983 agreement (the "1983 agreement") between Philips and General Instrument Corporation ("GI"). The 1983 agreement granted GI a non-exclusive license to specified Philips' patents.[1] Microchip claimed to be GI's successor to the 1983 agreement (and thus licensed under that agreement) because it was "spun off" from "a wholly owned subsidiary" of GI. (J.A. at 284.) Philips argued that Microchip never became a party to the 1983 agreement.

The 1983 agreement also included an arbitration clause that provided:

All disputes arising out of or in connection with the interpretation or execution of this Agreement during its life or thereafter shall be finally settled according to the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators in accordance with the Rules.... The award of the Court of Arbitration shall be final and binding.

[1]. The 1983 agreement grants a license to Philips' "Dutch patent application number 8005976 and its foreign counterparts." (J.A. at 310.) Application 8005976 is the priority application for the '740 patent. Philips asserts that the '502 patent is not a "counterpart" to the 8005976 application. Philips also asserts that the scope of the license was limited to a defined set of products. Neither of these arguments is at issue in this appeal,

(J.A. at 328.)[2] On December 16, 2002, Philips commenced an arbitration proceeding against Microchip in the International Court of Arbitration (the "ICA") of the International Chamber of Commerce seeking resolution of the license dispute including the issue of Microchip's successorship to the 1983 agreement.

Microchip refused to arbitrate. While continuing to urge that Microchip was not a party to the 1983 agreement, Philips moved in the Arizona district court to compel Microchip to proceed with arbitration, and the ICA agreed to hold the arbitration in abeyance. Philips asserted that the issue of whether Microchip was a successor to the 1983 agreement, and other issues concerning the existence and scope of the license, were subject to arbitration. Microchip responded by filing a motion to stay the arbitration, contending that (1) the question of whether Microchip was a party to the 1983 agreement was a gateway issue for the district court to resolve prior to referring the matter to arbitration; and (2) all of the disputed issues were for the court to decide because the arbitration clause had, by terms of the contract, expired (although the license remained in effect).

The district court denied Philips' motion to compel arbitration, but did not finally decide the issue of arbitrability, successorship or expiration of the arbitration clause. The court stated that:

and neither party suggests that these particular issues are not arbitrable assuming that the license dispute itself is arbitrable.

[2]. We note that the parties in the appendix have improperly marked the language of the arbitration clause as confidential. The language of Article VIII of the agreement has also been improperly marked as confidential.

Before it can determine arbitrability, the Court must first determine if both Microchip and Philips are parties to the GI Agreement. This is admittedly in dispute and is the primary basis for declaratory relief. Making this determination would require the Court to undertake an intense factual inquiry inappropriate for a motion to dismiss. Accordingly, because the Court is unable to determine the applicability of the GI Agreement to these parties, it is unwilling to enforce the arbitration clause contained therein.

*Microchip Tech.,* slip op. at 7. Microchip's motion to stay the arbitration was also granted. *Id.* Philips appealed from the district court's denial of its motion to compel arbitration.

## DISCUSSION

### I

▉ Before addressing the merits, we must consider the issue of appellate jurisdiction, which is governed by the law of this circuit. *Nystrom v. TREX Co., Inc.,* 339 F.3d 1347, 1349–50 (Fed.Cir.2003). The district court's decision in this case was not final. Therefore we do not have jurisdiction under 28 U.S.C. 1295(a)(1). However, we conclude that section 16 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 16 (2000), rendered the order appealable under 28 U.S.C. § 1292(a)(1).

▉ The FAA is applicable to settlement and license agreements involving patents. *Flex–Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1365 (Fed.Cir.2001); *see* 35 U.S.C. § 294 (2000). The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition a district court for an order compelling arbitration. 9 U.S.C. § 4 (2000).[3] Congress amended the FAA in 1988 to allow a party to appeal an order denying a motion to compel arbitration. Judicial Improvements Act, Pub.L. No. 100–702, tit. X, § 1019(a), 102 Stat. 4671, § 15 (1988) (codified at 9 U.S.C. § 16 (2000)). The Act provides that an appeal can be taken from "an order ... denying a petition ... to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B).

▉ We conclude that section 16 of the FAA removes the barriers to appellate jurisdiction under 28 U.S.C. § 1292(a)(1). Our reasoning is as follows. An order compelling arbitration is in effect a mandatory injunction. *See Sinclair Ref. Co. v. Atkinson,* 370 U.S. 195, 212, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). Denial of a mandatory injunction is ordinarily appealable under section 1292(a)(1). *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 287, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). However, under the Supreme Court's decision in *Gulfstream,* an order that has "the practical effect of granting or denying [an] injunction[ ]" (such as an order compelling or refusing to compel

---

**3.** Section 4 provides in relevant part that:
[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.
9 U.S.C. § 4.

arbitration) would only be appealable under section 1292(a)(1) if it had "serious, perhaps irreparable, consequence." *Id.* at 288, 108 S.Ct. 1133 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). Before the enactment of section 16, some regional circuits concluded that the denial of an order to compel arbitration did not have such consequences.[4] Congress however disagreed and, through the enactment of section 16, directed that orders denying such motions be appealable.

Section 16 is not itself a jurisdictional provision. It does not appear in the Judicial Code, nor does the word "jurisdiction" even appear in the statutory language. Rather, section 16 renders appealable under section 1292(a)(1) the denial of an injunctive order (*i.e.*, motions to compel arbitration) that otherwise would not be appealable under *Gulfstream.*[5] Since the district court had jurisdiction under 28 U.S.C. § 1338, and the order is appealable under section 1292(a)(1), we, rather than the regional circuit, have appellate jurisdiction. 28 U.S.C. § 1292(c)(1) (2000); *but see Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 51–53 (3d Cir.2001).

■ We agree with our sister circuits that section 16 allows for appeal of orders denying motions to compel arbitration even when the issue of arbitrability has not been finally decided. In *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir.2002), the Fourth Circuit held that it possessed appellate jurisdiction under section 16 to consider an order denying a motion to compel arbitration. There the district court denied a motion to compel arbitration and stay proceedings without prejudice and "stated its intention to revisit the ruling at a later time." *Id.* at 635. The Fourth Circuit noted that this "triggered alarm bells of a premature appeal," but concluded that it possessed jurisdiction because "the FAA expressly permits an immediate appellate challenge to a district court's denial of a motion to compel arbitration and stay proceedings." *Id.* Other circuit courts have reached similar results. *See, e.g., Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 103–04 (3d Cir.2000) (finding jurisdiction under section 16 to review the denial of a motion to compel arbitration where the district court indicated that it could not order arbitration until it determined the validity of the underlying contract); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 363 (7th Cir.1999) (holding that, despite the district court's indication "that discovery was needed before a decision could be reached on the arbitration issue," there was no doubt that the order denied the motion to compel arbitration, and was thus appealable).

While district courts might be well advised to defer acting on a motion to compel arbitration until the issues of arbitrability are finally resolved, we nonetheless conclude that we have jurisdiction to review the order denying Philips' motion to compel arbitration.

4. *See Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1279 (11th Cir.1988); *cf Cent. States, Southeast and Southwest Areas Pension Fund v. Cent. Cartage Co.*, 84 F.3d 988, 992 (7th Cir.1996); *but see Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir.1988).

5. Of course, if section 16 is inapplicable, section 1292(a)(1) continues to be inapplicable to motions to compel arbitration. *See Cent. States*, 84 F.3d at 992–93 (holding that section 1292(a)(1) did not confer jurisdiction when section 16 did not apply).

## II

Turning now to the merits, the question is whether the district court was obligated to refer to arbitration questions related to the existence of an arbitration agreement between Philips and Microchip. We hold that it was not.

## A

The obligation to arbitrate, if it exists, must arise from the 1983 agreement. The first question is whether Microchip is a successor party to the 1983 agreement originally made between Philips and GI. Microchip argues that the question of successorship is a "gateway issue" for the district court to decide because it determines whether an arbitration agreement exists between Philips and Microchip. Philips responds that there is no dispute that the agreement exists, but rather the question is whether the "arbitration clause is effective" against Microchip. Philips urges that this question is arbitrable, relying primarily on the Ninth Circuit's decision in *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404 (9th Cir.1989), which it argues is binding on our court.

In *Teledyne* the Ninth Circuit held that the issue of whether an agreement to arbitrate exists is arbitrable if there is no "independent challenge" to the arbitration provision separate from an attack on the contract as a whole. *Id.* at 1410. There the parties disputed whether a draft of a distribution contract had been finalized by the parties. Relying on the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Ninth Circuit held that the "court must not remove from the arbitrators consideration of a substantive chal-

lenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." *Teledyne*, 892 F.2d at 1410 (quoting *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir.1985)). Because there was no dispute that the draft contained an arbitration provision, the Ninth Circuit held that the existence of the contract as a whole was arbitrable absent a separate, independent challenge to the enforceability of the arbitration provision. *Id.*

The parties differ sharply over whether *Teledyne* is distinguishable under subsequent Ninth Circuit decisions. *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1142 (9th Cir.1991); *Camping Constr. Co. v. Dist. Council of Iron Workers, Iron Workers Local Union 378*, 915 F.2d 1333, 1340 (9th Cir.1990). We need not resolve that dispute because we conclude that the Supreme Court has already done so. We are obligated to follow regional circuit law on questions of arbitrability that are not "intimately involved in the substance of enforcement of a patent right." *Flex–Foot*, 238 F.3d at 1365; *see also Deprenyl Animal Health v. Univ. of Toronto*, 297 F.3d 1343, 1349 (Fed.Cir.2002). The issues of arbitrability in this case are not intimately involved in the substance of enforcement of a patent right, and we would ordinarily be obligated to follow regional circuit law. However that obligation is not unqualified. Where regional circuit authority is contrary to governing Supreme Court precedent we need not, and indeed must not, follow it. *See, e.g., Williams v. United States*, 240 F.3d 1019, 1030 (Fed. Cir.2001) (holding that we are "strictly bound" to follow applicable Supreme Court precedent). That is the situation here.

In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court held that the question of whether a party is bound by an agreement containing an arbitration provision is a "threshold question" for the court to decide. *Id.* at 546, 84 S.Ct. 909. There, a collective bargaining agreement containing an arbitration provision was entered into between a workers union and Interscience Publishers, Inc. ("Interscience"). *Id.* at 545, 84 S.Ct. 909. Subsequently, Interscience merged with John Wiley & Sons, Inc. ("Wiley"), and a dispute arose as to whether Wiley was bound by the collective bargaining agreement. *Id.* Wiley asserted that the merger "terminated the bargaining agreement for all purposes." *Id.* The union contended that Wiley was obligated to recognize certain "vested" rights under the agreement and sought to compel arbitration. *Id.* The Supreme Court explained that the threshold "question [wa]s whether Wiley, which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all by the agreement's arbitration provision." *Id.* at 547, 84 S.Ct. 909. Because a party "cannot be compelled to arbitrate if an arbitration clause does not bind it," the Court held that there was "no doubt" that "a compulsory submission to arbitration cannot precede judicial determination that the ... agreement does in fact create such a duty." *Id.* at 546–47, 84 S.Ct. 909.

Subsequent Supreme Court decisions, including decisions subsequent to the Ninth Circuit's 1989 *Teledyne* decision, have consistently reaffirmed the holding in *John Wiley,* explaining that "a gateway dispute about whether the parties are bound by a given arbitration clause [is] for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (citing *John Wiley,* 376 U.S. at 546–47, 84 S.Ct. 909); *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")

For example, in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court explained that "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944, 115 S.Ct. 1920 (internal quotation marks and alterations omitted). The issue there was whether Kaplan, the owner of a wholly owned investment company, was required to arbitrate a dispute over an agreement between his investment company and another firm. *Id.* at 941, 115 S.Ct. 1920. While it was undisputed that his investment company had agreed to arbitrate under the agreement, Kaplan asserted that because he had not personally signed the agreement, he was not obligated to arbitrate in an individual capacity. *Id.* Because this was a gateway question of "who should decide arbitrability," the Court cautioned that "silence or ambiguity" on the point should not be interpreted to give the arbitrators the power to decide the issue. *Id.* at 945, 115 S.Ct. 1920. Since Kaplan had not clearly and unmistakably agreed to arbitrate the question of whether he himself was bound by the agreement, the Court held that this was a question for judicial resolution. *Id.* at 946, 115 S.Ct. 1920.

The Supreme Court's opinion in *Prima Paint,* relied upon in *Teledyne,* is consis-

tent with these decisions and does not, as the appellant contends, require the successorship issue to be submitted to arbitration. The question in *Prima Paint* was whether fraudulent inducement voided a contract containing an arbitration clause. 388 U.S. at 402, 87 S.Ct. 1801. Because there was no "threshold question" as to the existence of the agreement itself, the issue of whether the contract was *voidable* for fraud was arbitrable. *See Id.* at 402, 87 S.Ct. 1801.

■ Contrary to the Ninth Circuit's decision in *Teledyne*, the responsibility of the judiciary to resolve the gateway dispute of whether an agreement to arbitrate exists is not limited to situations in which there is an independent challenge to the arbitration clause. *See John Wiley*, 376 U.S. at 545, 84 S.Ct. 909; *Howsam*, 537 U.S. at 84, 123 S.Ct. 588. Indeed the "threshold question" for the court in *John Wiley* was a challenge to the existence of the entire agreement. That question is essentially identical to the successorship issue in the present case, *i.e.*, "whether [Microchip], which did not itself sign the . . . agreement on which [Philips'] claim to arbitration depends, is bound at all by the agreement's arbitration provision." *See John Wiley*, 376 U.S. at 547, 84 S.Ct. 909; *see also First Options*, 514 U.S. at 944, 115 S.Ct. 1920 (holding the court must decide if Kaplan was bound by an agreement he did not personally sign).

Philips also argues that the present case, like *Teledyne*, is distinguishable from *John Wiley* because here the party that opposes arbitration argues (indeed urges) that it is bound by the agreement containing the arbitration provision. *See Three Valleys*, 925 F.2d at 1142 (distinguishing the decision in *Teledyne* ). Again the Supreme Court has drawn no such distinc-

tion. The Court has broadly held that because a party "cannot be compelled to arbitrate if an arbitration clause does not bind it," *John Wiley*, 376 U.S. at 547, 84 S.Ct. 909, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator," *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415; *see Howsam*, 537 U.S. at 83, 123 S.Ct. 588; *First Options*, 514 U.S. at 944, 115 S.Ct. 1920.

Therefore, we hold that the district court must determine whether Microchip was a successor party to the 1983 agreement before any issue may be referred to arbitration under that agreement. It was not error for the district court to deny Philips' motion to compel arbitration pending resolution of that question.

### B

■ In addition to the survivorship issue, Microchip contends that all issues in this case are for the district court to decide because the arbitration clause in the 1983 agreement has expired. The 1983 agreement provides in Article VIII that it "shall continue in force and effect" through 1987 and "[u]pon expiration . . . all rights, privileges and obligations . . . other than those specified in Articles III, IV, V, IX and X . . . shall terminate." (J.A. at 322.) While the license provisions (contained in Article IV) were excluded from expiration, Microchip urges that the arbitration clause (contained in Article XV) was not excepted and is no longer in effect.

Just as the question of whether an agreement to arbitrate exists between the parties is for judicial resolution, we conclude that under the Supreme Court's precedent the question of whether an arbitration agreement has expired is for the court to decide, even if this requires inter-

pretation of the language of the agreement. *See, e.g., Howsam,* 537 U.S. at 85, 123 S.Ct. 588; *First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920; *AT&T,* 475 U.S. at 649, 106 S.Ct. 1415; *John Wiley,* 376 U.S. at 547, 84 S.Ct. 909.[6] Here we find no merit in Microchip's argument that the arbitration clause has expired.

It is clear on the face of the 1983 agreement's arbitration clause that the obligation to arbitrate survives expiration of the agreement's other provisions. The arbitration clause specifically provides that "[a]ll disputes arising out of or in connection with the interpretation or execution of this Agreement *during its life or thereafter*" are subject to arbitration. (J.A. at 328–29) (emphasis added). In light of the unambiguous language of the arbitration clause itself, we reject Microchip's argument that the obligation to arbitrate expired prior to this dispute.

## CONCLUSION

We conclude that the arbitration clause under the 1983 agreement has not expired, but that the district court must determine whether Microchip is a successor party to GI under the 1983 agreement before compelling arbitration under that agreement.[7] The district court's decision denying Philips' motion to compel arbitration is

*AFFIRMED.*

COSTS

No costs.

---

**6.** The Ninth Circuit has held that questions of whether a contract containing an arbitration clause has expired are generally for the court. *See N. Cal. Newspaper Guild Local 52 v. Sacramento Union,* 856 F.2d 1381, 1383 (9th Cir.1988); *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63,* 849 F.2d 1236, 1239 (9th Cir.1988). But the Ninth Circuit has held that some are for the arbitrators. *See Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.,* 832 F.2d 507, 511 (9th Cir.1987). We find no suggestion in these cases that an expiration question particularly related to the arbitration clause itself, like the expiration question here, would be for the arbitrators to resolve.

**7.** The district court did not reach Microchip's argument that Philips waived the right to compel arbitration. We note that the Supreme Court has stated that "the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.'" *Howsam,* 537 U.S. at 84, 123 S.Ct. 588 (quoting *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927). In any event, we decline to address this issue in the first instance on appeal.