**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: July 23, 2015
Date Decided: July 23, 2015

Vernon Proctor, Esquire
Aaron Nelson, Esquire
Proctor Heyman Enerio LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Christopher A. Ward, Esquire
Christopher M. Coggins, Esquire
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801

Re:  *CVD Equipment Corp. v. Development Specialists, Inc.*
Civil Action No. 11062-VCG

Dear Counsel:

This matter arises in a peculiar procedural posture.[1] Plaintiff CVD Equipment Corporation (the "Seller") entered into a purchase agreement with Stion Corporation (the "Buyer") for the sale of certain equipment (the "Purchase Agreement"), which Purchase Agreement included an arbitration clause. Eventually, the Buyer became insolvent and assigned its assets for the benefit of creditors, under California law, to Defendant Development Specialists, Inc. (the "Assignee"). The Assignee sold the Buyer's tangible assets but retained choses in action. According to the Assignee, the Seller was in breach of the Purchase Agreement, and the Assignee brought a complaint in arbitration, seeking damages

---

[1] The facts included in this Letter Opinion are taken entirely from the Plaintiff's Verified Complaint to Enjoin Arbitration (the "Complaint") and are not in dispute.

for the breach. The Seller challenged the Assignee's standing and, relatedly, the arbitrator's jurisdiction to hear the matter; it reserved, however, the right to raise the same issues in this Court. The arbitrator, E. Norman Veasey, Esquire, determined that the Assignee had standing to bring the action and that the Purchase Agreement conferred jurisdiction upon him to hear the matter. The Seller brought this action seeking to enjoin the arbitration and has moved for such injunctive relief.[2] The Assignee asks me to dismiss this matter for lack of subject matter jurisdiction, arguing that the Purchase Agreement provides a remedy before the arbitrator. I agree with the latter proposition, and accordingly grant the Assignee's Motion to Dismiss.

The facts before me are not in dispute, and the parties agree that the Seller is entitled to a *de novo* determination of the jurisdiction/standing question. The parties also agree that the Purchase Agreement contains a broad arbitration clause and incorporates the rules of the American Arbitration Association, and that normally under those circumstances, pursuant to our Supreme Court's decision in *James & Jackson, LLC v. Willie Gary, LLC*,[3] questions of substantive arbitrability are for the arbitrator to determine.[4] Nevertheless, the Seller argues that here I must

---

[2] The Seller originally moved for a preliminary injunction but represented at oral argument that no further factual development was necessary and that it was seeking final relief based on the undisputed facts in its Complaint.

[3] 906 A.2d 76, 80 (Del. 2006).

[4] The question of whether a party is bound to arbitrate—the question of so-called "substantive arbitrability"—*and* the related question of who should make that determination, court or

2

rule, as a matter of law, that it has no contractual duty to arbitrate with the Assignee, a stranger to the Purchase Agreement between the Seller and the Buyer. It argues that the question of whether there is a contract to arbitrate between these parties is a predicate question that must be resolved by this Court, and not a matter of substantive arbitrability to be presented to the arbitrator. For its part, the Assignee asks that I find, as a matter of law, that an assignee for the benefit of creditors under California law stands in the shoes of the assignor and therefore may, as a matter of law, exercise any contractual right that could have been exercised by the assignor.[5] Because this case can be decided more narrowly, I decline both of these invitations.

The peculiar factual predicate to this case is significant: the Seller agreed with the Buyer in the Purchase Agreement that "[a]ny claim or controversy arising out of or relating to this Purchase Agreement or the breach of this Purchase Agreement shall be resolved by binding arbitration in or around the State of

arbitrator, are matters of the intent of the parties as expressed in the contract. Only where, as here, the parties have clearly indicated their intent to have questions of substantive arbitrability presented to the arbitrator will the court so defer; otherwise, these questions are properly before the court. *See, e.g., Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, 2011 WL 1348438, at *16 (Del. Ch. Apr. 8, 2011).

[5] To be clear, California law controls the assignment for the benefit of creditors between the Buyer and the Assignee, but the law I apply in this Letter Opinion is Delaware law—the law governing the Purchase Agreement. *See* Compl. Ex. A, § 20 ("This Purchase Agreement and any controversy relating to this Purchase Agreement shall be governed by the laws of the State of Delaware, without regard to conflict of law principles."). Specifically, I apply Delaware law as it informs the Federal Arbitration Act, which both parties concede governs the enforceability of this arbitration provision. *See, e.g., Willie Gary LLC v. James & Jackson LLC*, 2006 WL 75309, at *5 (Del. Ch. Jan. 10, 2006) (explaining the interplay between the Federal Arbitration Act and state law).

3

Delaware by a single arbitrator under the commercial rules of the American Arbitration Association then in effect."[6] The Assignee seeks to present a claim for breach of contract to the arbitrator that is clearly within this broad arbitration language. The Seller, therefore, is signatory to and bound by a contract under which it is compelled to arbitrate the issue which the Assignee has placed before the arbitrator. The standing and jurisdictional questions that the Seller seeks to raise, in that context, are questions of scope: Was the arbitration provision drafted broadly enough to include disputes arising from the Purchase Agreement brought not by a signatory to that contract, but by an assignee of that signatory pursuant to an assignment for the benefit of creditors? The Seller concedes, consistent with *Willie Gary*, that it agreed in the Purchase Agreement that questions of substantive arbitrability would be decided by the arbitrator. The question of scope described above, is just such a question.[7]

---

[6] Compl. Ex. 1, § 20.

[7] *Cf. Meso Scale*, 2011 WL 1348438, at *15–17 ("This dispute focuses on the gateway issue of whether Plaintiffs may invoke the arbitration provisions in the Roche License based on their having consented to and joined in parts of that License. I find that issue to be related to the scope of the arbitration provisions and, therefore, substantive in nature."). I note, however, that the federal circuits are split on this issue and its varying iterations. *Compare Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("Whether the right to compel arbitration survives the termination of the agreement, and if so, whether that right was validly assigned to the defendants and whether it can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement."), *and Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 210 (2d Cir. 2005) (adopting the holding of *Apollo*, stating, "Under the reasoning of *Apollo*, whether the arbitration rights under the 1999 Agreement were validly assigned by Contec L.P. to [the plaintiff] is an issue that pertains directly to the continued 'existence, scope or validity' of the Agreement. As such, it is within the jurisdiction of the arbitrator pursuant to AAA Rule R-7(a) as incorporated into the 1999 Agreement."), *and*

In light of this context, the only issue I must, and may, decide is whether the Assignee's position—that an action for breach of contract brought by an assignee for the benefit of creditors is within the scope of the agreement to which the Seller is bound—constitutes a non-frivolous legal claim.[8] The Seller contends that the

---

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327,1332–33 (11th Cir. 2005) (determining that the issue of whether an arbitration agreement is unenforceable due to non-severable remedial restrictions concerns the "existence, scope or validity of the arbitration agreement," which the parties had agreed the arbitrator should decide by incorporating the AAA Rules), *with Microchip Tech. Inc.v. U.S. Philips Corp.*, 367 F.3d 1350, 1358–59 (Fed. Cir. 2004) (holding, notwithstanding that the parties had adopted a broad arbitration clause incorporating arbitration rules by which the arbitrator is to determine arbitrability, that the issues of whether an agreement to arbitrate exists between the parties and whether an arbitration agreement has expired are both issues for the court, not the arbitrator to determine, regardless of whether it is a non-signatory seeking to enforce arbitration against a signatory or vice versa), *and In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, 838 F. Supp. 2d 976, 985–87 (C.D. Cal. Mar. 12, 2012) (holding that the issue of whether a non-signatory can enforce an arbitration provision against a signatory under the doctrine of equitable estoppel is a threshold question properly before the court, and distinguishing *Apollo* and *Contec* as cases where the non-signatory had a relationship to the relevant agreement), *and Calanese Corp. v. Boc Group PLC*, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6, 2005) (holding that the issue of whether a signatory to the contract who was expressly excluded from the arbitration provision can invoke that arbitration provision is a threshold issue properly before the court, and distinguishing *Apollo* and *Contec* by reasoning that "the cases . . . allowing a nonsignatory to compel a signatory to arbitrate issues of arbitrability involve a nonsignatory defendant that essentially stood in the shoes of a signatory to the arbitration agreement when defending the suit").

[8] *See Meso Scale*, 2011 WL 1348438, at *17 ("This conclusion [that the defendant, Roche, clearly and unmistakably committed questions of arbitrability to the arbitrator] also withstands Roche's argument that Plaintiffs lack standing to compel Roche to arbitrate their claim because they were not "Parties" to the license, and merely joined in or consented to it. Although it is tempting to address that issue on its merits, it would be inconsistent with *Willie Gary* for a court to address the merits of the underlying claim once it has determined that an arbitrator should decide arbitrability. Nevertheless, consistent with my holdings in *Julian*, in cases where the parties dispute whether the arbitrator should decide arbitrability because one party claims the other does not have standing to compel arbitration, 'a court conceivably could consider a preliminary question of whether or not there is a colorable basis for the court to conclude that' the opposing party, in fact, has such standing. As such, '[i]f there is such a colorable basis, along with a broad clause and reference to the AAA Rules or something analogous to them, then the question of substantive arbitrability should be sent to the arbitrator.'" (alteration in original) (footnotes omitted) (quoting *Julian v. Julian*, 2009 WL 2937121, at *7 (Del. Ch. Sept. 9,

5

Assignee's position is frivolous for two reasons. First, the Seller points out that there is a provision in the Purchase Agreement entitled "No Assignments," and argues that, since that clause does not expressly grant the Buyer the right to assign rights and responsibilities under the Purchase Agreement, the underlying action for breach of contract is not maintainable by the Assignee, in arbitration or elsewhere. The Assignee counters with a non-frivolous argument that the clause by its language grants, not restricts, specific assignment rights, and that nothing in the language of the clause prohibits assignment of any rights by the Buyer.[9] In fact, the Assignee asserts that the only evidence of an attempt to restrict assignability is the title of the clause, "No Assignments," and that even that title is merely an artifact of an entirely different version of the clause that the parties changed in the drafting process.[10]

---

2009))); *McLaughlin v. McCann*, 942 A.2d 616, 626–27 (Del. Ch. 2008) ("[A]bsent a clear showing that the party desiring arbitration has essentially no non-frivolous argument about substantive arbitrability to make before the arbitrator, the court should require the signatory to address its arguments against arbitrability to the arbitrator. Otherwise, the efficiency gains contemplated by *Willie Gary* will be greatly undermined.").

[9] The clause in question provides, in full and unedited form:

> Unless this Purchase Agreement expressly provides otherwise, SELLER shall have the right to assign, delegate or subcontract all or any portion of this Purchase Agreement to any party other than SELLER without the prior written consent of BUYER. BUYER shall have the right to transfer the PURCHASE AGREEMENT upon sale, acquisition, consolidation, or merger in whole or in part of BUYER. SELLER shall have the right to transfer the PURCHASE AGREEMENT upon sale, acquisition, consolidation, or merger in whole or in part of SELLER.

Compl. Ex. 1, § 17.

[10] This case is in an unusual posture, conflating a hearing for final injunctive relief with argument on a motion to dismiss. Strictly speaking, the evidence supporting the Assignee's

Next, the Seller contends that it cannot have intended via the Purchase Agreement to agree to arbitrate with an entity it was not aware of at the time of contracting, and that the Assignee should be limited to proceeding on its assigned claim in a court, rather than before an arbitrator. The Assignee, on the other hand, maintains that its status as an assignee for the benefit of creditors attempting to vindicate the Purchase Agreement through a money judgment leaves the Seller and the Assignee in the precise positions they would have assumed without the Buyer's insolvency, if the Buyer itself were pursuing the claim. The Assignee further argues that by contracting, broadly, to arbitrate "all claims" arising from the Purchase Agreement, the Seller did manifest its intent to be bound to arbitrate under the circumstances here.

The Assignee's position, in my view, is not frivolous. Given that, I must resist any temptation to decide the matter and leave the decision to the arbitrator. Since the Seller contractually agreed to be bound on questions of substantive arbitrability by the arbitrator, a complete contractual remedy exists in arbitration, and I am without jurisdiction.

For the foregoing reasons, the Assignee's Motion to Dismiss is granted, and the Seller's request for injunctive relief is moot. IT IS SO ORDERED.

---

latter argument here, concerning the drafting history of the clause, is beyond my purview on a motion to dismiss, and I do not base my decision on that evidence.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III